# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

March 28, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 13-0594** (Mineral County 13-JD-5, 13-JD-11, and 13-JD-12)

**Michael D.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Michael D., by counsel Agnieszka Collins, appeals the order of the Circuit Court of Mineral County, entered June 5, 2013, committing him to the Division of Juvenile Services. Respondent State of West Virginia appears by counsel Laura Young.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At the conclusion of a bench trial conducted in June of 2013, the circuit court adjudicated petitioner a delinquent for his commission of burglary, petit larceny, two counts of domestic battery, and three counts of attempted burglary, all offenses which would be crimes if committed by an adult.[1] By order entered June 5, 2013, petitioner was committed to the custody of the Division of Juvenile Services until he reaches the age of twenty-one or is sooner released by law. Petitioner appealed that order. On appeal, he presents two assignments of error: first, that the evidence is insufficient to support the circuit court's finding with respect to the three counts of attempted burglary and, second, that the evidence is insufficient to support the circuit court's finding with respect to burglary and petit larceny.[2]

Rules of evidence and procedural rights applicable in adult criminal proceedings are

---

[1]Petitioner was fourteen years old at the time of the events giving rise to the juvenile petitions, and at the time of the bench trial.

[2]Petitioner does not dispute the court's finding that he engaged in domestic battery. According to the testimony of various witnesses at the adjudicatory hearing, the domestic battery allegations arise from petitioner's striking his sister with a crowbar and striking his stepfather with a steak knife.

1

applicable with equal force in juvenile adjudicatory proceedings. W.Va. Code §§ 49–5–2(j) and (k) (2009). An adjudication of delinquency is subject to the same standards of review on appeal as is a criminal conviction. *See State ex rel. D.D.H. v. Dostert*, 165 W.Va. 448, 269 S.E.2d 401 (1980). We review a sufficiency of the evidence argument under the following framework:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Viewing the evidence in this case in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the essential elements of burglary, attempted burglary, and petit larceny were proven beyond a reasonable doubt.

Bruce Snyder, who lived in the same neighborhood as petitioner, testified that he and his girlfriend, Deborah Devore, returned from a trip to Wal-Mart in January of 2013 and determined that several items were missing from their shared home. These items included a picture that had been removed from a frame on the couple's dresser, an Xbox game controller, and some Xbox games. Mr. Snyder testified that he and Ms. Devore had suspected for some time that petitioner had been entering their home without permission. Based on this suspicion, Ms. Devore went directly to petitioner's home and demanded of petitioner's sister that the belongings be returned within ten minutes, explaining that she would otherwise contact the police.[3] Within ten minutes, the sister brought "a few Xbox games and one controller, and the picture out of the picture frame" to the Snyder home.

Petitioner argues on appeal that the State failed to present sufficient evidence of burglary and petit larceny because the testimony did not specifically identify the missing items, and that petitioner's twin sister likely gathered several of petitioner's own belongings and gave them to Ms. Devore out of fear.[4] In fact, petitioner's sister testified that the games she returned to Mr. Snyder's family did belong to petitioner, and that they were items "[t]hat he got for Christmas,

---

[3]By her own testimony, it is clear that Ms. Devore did not approach petitioner's sister calmly. She described herself as "pounding on their door . . . [and] screaming and carrying on . . ."

[4]The elements of the crime of burglary are set forth in West Virginia Code § 61–3–11(a) (2010), which states, in pertinent part, "[i]f any person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of burglary." The misdemeanor offense of petit larceny involves the taking of goods valued at less than one thousand dollars. W.Va. Code § 61-3-13 (2010).

that I never knew he got." She also testified that Mr. Snyder's son had given petitioner the family picture. But the circuit court clearly did not credit this testimony, inasmuch as the court warned her that her testimony conflicted with her earlier testimony. Furthermore, Mr. Snyder testified that when petitioner's sister returned the items, he identified them as the ones that had been missing from his home, including the picture that was removed from the frame in his bedroom.

A week after the events giving rise to the petition related to the burglary, Mr. Snyder installed a surveillance system at his home. The evidence supporting the court's finding that petitioner engaged in attempted burglary begins with that surveillance. Mr. Snyder testified that video taken from the equipment showed petitioner again trying to gain access to Mr. Snyder's home on March 12, 2013. Mr. Snyder explained the footage while it was played for the court:

> That's my back porch. And, right there, [petitioner] is trying the front—trying the door knob. That's where my hide-a-key was before . . . Now if I remember right, he walks up to the backyard, and then a little bit later you see him come out into the backyard, and then a little bit later you see him come out. There's a door right underneath of this camera. You see where he walked underneath the camera and went to this side door too, and then walked out.

The witness clarified that the video showed petitioner attempting to push in the back door, and that this sequence transpired in the middle of a weekday "while everybody was at work and everybody was supposed to be in school . . . ."

Another neighbor, Suzanne Taylor, testified that she saw petitioner run away from her home when she unexpectedly returned home in the middle of that same day. Neighbor Jim Johnson testified that he saw a boy under the deck of Ms. Taylor's house that day, and that he saw petitioner try to open her garage door and try a door knob. State Police Corporal Fletcher investigated these events, comparing Mr. Johnson's description of the person he saw to the surveillance video provided by Mr. Snyder. The officer concluded that petitioner was the person seen by Mr. Johnson. Finally, Ms. Taylor testified that she also had observed petitioner run from her home on an occasion the prior month, and that she saw him attempt the door knob before he saw her.

With respect to the court's finding that petitioner attempted to burglarize his neighbor's homes, petitioner argues that there is no evidence of intent to commit an underlying crime, and that there is a lack of evidence of an attempt to "break in." According to petitioner, it is just as likely that he was in search of friends with whom he could play.

According to the testimony of petitioner's mother, petitioner was not permitted at the Snyder home or the Taylor home. Furthermore, while she stated that petitioner was a friend of Mr. Snyder and Ms. Devore's son, as well as of Ms. Taylor's son, petitioner's mother testified that the boys did not visit one another at their homes. Moreover, this is not a situation, as petitioner urges, of his "simply turning a door knob and finding out that a door is locked." Rather, the evidence shows that petitioner circled his neighbors' homes, likely searched for hidden keys, pushed doors, and attempted not only doors, but also windows and garage doors. These are not the actions of a well-intentioned youngster searching for a playmate. Under these

circumstances the trier of fact was within his discretion to infer that petitioner attempted to break and enter his neighbors' homes for the purpose of committing a crime therein. The circuit court did not err in adjudicating petitioner a juvenile delinquent.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 28, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4